[Cite as *State v. Sterling*, 2026-Ohio-2676.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

---

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

ARIEL STERLING,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-24

OPINION AND
JUDGMENT ENTRY

---

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2025 0078

**Judgment Affirmed**

**Date of Decision: July 13, 2026**

---

APPEARANCES:

    *Chima R. Ekeh* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Ariel Sterling ("Sterling"), appeals the May 23, 2025 judgment entry of sentencing of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a February 13, 2024 armed robbery that took place at the home of Sterling's grandmother in Lima, Ohio. Sterling and two accomplices devised a plan to lure the victim to the home under the guise of "hanging out" with Sterling, then steal his gun. While Sterling and the victim were in the bedroom, the accomplices waited in another area of the home for Sterling to communicate on her cell phone when to commence the robbery. The accomplices stormed into the bedroom, brandishing their own firearms. They assaulted the victim and took his gun. Nevertheless, the victim left the home and returned a short while later with a second gun. The victim fired shots through a window, striking and killing Sterling's twin sister. Sterling was 14 years old at the time of the offense.

{¶3} On March 4, 2024, a complaint was filed in the Allen County Court of Common Pleas, Juvenile Division, alleging that Sterling was a delinquent child by reason of the offense of aggravated robbery in violation of R.C. 2911.01(A)(1), (C), a felony of the first degree if committed by an adult. The complaint further alleged that the offense involved a firearm and included a three-year firearm specification

under R.C. 2941.145(A). On April 11, 2024, Sterling appeared in juvenile court and denied the allegations in the complaint.

{¶4} Following a preliminary hearing on August 7, 2024, and reconvened on October 21, 2024, the juvenile court ruled that there was probable cause to believe that Sterling committed the acts alleged in the complaint. Thereafter, the juvenile court conducted an amenability hearing on February 11, 2025. On February 25, 2025, the juvenile court issued a judgment entry concluding that Sterling was not amenable to care and rehabilitation within the juvenile system and ordered that her case be transferred to the Allen County Court of Common Pleas, General Division, for Sterling to be prosecuted as an adult.

{¶5} On March 13, 2025, the Allen County Grand Jury indicted Sterling on Count One of aggravated robbery in violation of R.C. 2911.01(A)(1), (C), a first-degree felony; Count Two of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), a second-degree felony; and Count Three of grand theft when the property is a firearm or dangerous ordnance in violation of R.C. 2913.02(A)(1), (B)(4), a third-degree felony. The indictment included three-year firearm specifications under R.C. 2941.145(A) as to Counts One and Two. On March 20, 2025, Sterling appeared for arraignment and entered pleas of not guilty.

{¶6} A change-of-plea hearing was held on April 17, 2025. At the hearing, Sterling withdrew her pleas of not guilty and entered a guilty plea, under a negotiated-plea agreement, to Count One of the indictment and the accompanying

three-year firearm specification. In exchange, the State agreed to dismiss Count Two (and the accompanying three-year firearm specification) and Count Three. The trial court conducted a plea colloquy, accepted Sterling's guilty plea, found her guilty, and ordered a presentence investigation.

{¶7} A sentencing hearing was held on May 23, 2025. The trial court sentenced Sterling to a mandatory minimum term of five years in prison, with a maximum term of seven and one-half years, for Count One, and an additional three years in prison for the firearm specification associated with Count One. The trial court ordered the terms to be served consecutively such that Sterling's aggregate prison term is a minimum of eight years to a maximum of ten and one-half years.

{¶8} On June 9, 2025, Sterling filed a notice of appeal, raising two assignments of error for our review which we will address together.

**First Assignment of Error**

**The Juvenile Court Violated Appellant's Due Process Rights To A Fair Proceeding When It Denied Her Request For A Second Amenability Examination. (January 8, 2025 Judgment Entry)**

**Second Assignment of Error**

**The Juvenile Court Abused Its Discretion By Transferring The Case To The Adult Court For Prosecution. (Tr. Amen. Hrng., pg. 173-174)**

{¶9} In her first assignment of error, Sterling argues that the juvenile court "violated her due process rights to a fair process" by denying her request for a second amenability examination. (Appellant's Brief at 9). Sterling contends that

"a second assessment from a person of the defense choosing could have helped the juvenile court to gain more insight into whether [she] was amenable to juvenile rehabilitation." (*Id.*).

{¶10} In her second assignment of error, Sterling argues that the juvenile court abused its discretion by transferring her case to the general division. Specifically, Sterling argues that the juvenile court abused its discretion by determining that she is not amenable to care or rehabilitation within the juvenile justice system, and that the safety of the community requires that she be subject to adult sanctions.

*Standard of Review*

{¶11} "In cases of a discretionary transfer, challenges to the trial court's findings regarding the amenability of the child to rehabilitation within the juvenile justice system are reviewed under an abuse of discretion standard." *State v. McDowell,* 2017-Ohio-9249, ¶ 13 (3d Dist.). An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶12} "'R.C. 2152.12 governs the transfer of a child from the juvenile court to the general division of the common pleas court.'" *State v. Smith,* 2024-Ohio-2674, ¶ 11 (3d Dist.), quoting *State v. Bush*, 2023-Ohio-4473, ¶ 20 (3d Dist.). "Under R.C. 2152.12(B), a juvenile court has discretion to transfer a case for

criminal prosecution if the court finds that (1) the child was 14 or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act charged; and (3) the child is 'not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.'" *Smith* at ¶ 11, quoting R.C. 2152.12(B).

{¶13} "When 'making the amenability determination under subdivision (B)(3) of R.C. 2152.12, the statute requires the juvenile court to decide whether the factors in R.C. 2152.12(D) that favor transferring jurisdiction outweigh the factors in R.C. 2152.12(E) that favor retaining jurisdiction.'" *Smith* at ¶ 12, quoting *Bush* at ¶ 21. Moreover, R.C. 2152.12(B)(3) provides that "[t]he record shall indicate the specific factors that were applicable and that the court weighed."

{¶14} The factors in favor of transferring jurisdiction are set forth in R.C. 2152.12(D) as follows:

> (D) In considering whether to transfer a child under division (B) of this section based on an act charged that would be a felony if committed by an adult, the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:
>
> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
>
> (2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
>
> (3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

R.C. 2152.12(D).

{¶15} Additionally, the factors in favor of retaining jurisdiction are set forth in R.C. 2152.12(E) as follows:

(E) In considering whether to transfer a child under division (B) of this section based on an act charged that would be a felony if committed by an adult, the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

R.C. 2152.12(E).

{¶16} Before considering whether to transfer jurisdiction under R.C. 2152.12(B), R.C. 2152.12(C) mandates as follows:

[T]he juvenile court shall order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination. The investigation shall be completed and a report on the investigation shall be submitted to the court as soon as possible but not more than forty-five calendar days after the court orders the investigation. The court may grant one or more extensions for a reasonable length of time. The child may waive the examination required by this division if the court finds that the waiver is competently and intelligently made. Refusal to submit to a mental examination by the child constitutes a waiver of the examination.

R.C. 2152.12(C). *See* Juv.R. 30(C) (stating that "[w]hen the investigation is completed, an amenability hearing shall be held to determine whether to transfer jurisdiction").

{¶17} In this case, after finding probable cause to believe that Sterling committed the alleged offense, the juvenile court ordered its Community Control Department to conduct an investigation into Sterling's social history, education, family situation, and any other relevant factors bearing on amenability. The juvenile court also appointed Dr. Carla S. Dreyer to perform a mental examination of Sterling as required under R.C. 2152.12(C) and Juv.R. 30(C). Dr. Dreyer evaluated Sterling on November 14, 2024, and submitted her report to the juvenile court on December 2, 2024.[1] Thereafter, on February 11, 2025, the juvenile court held an amenability hearing to determine whether Sterling's case should be transferred to the general division.

{¶18} On February 25, 2025, the juvenile court entered its judgment concluding that Sterling is not amenable to care and rehabilitation within the juvenile system, and that the safety of the community requires that she be subject to adult sanctions. In addressing the factors favoring transfer under R.C. 2152.12(D), the juvenile court found that the victim "suffered actual physical harm and economic harm/loss" as a result of the alleged offense and that Sterling did have "a relationship

---

[1] Dr. Dreyer's report sets forth a list of items reviewed as part of her evaluation of Sterling, including a social history prepared by the Community Control Department, a student progress report from the juvenile detention center, and school records from elementary, middle school, and high school.

with, and did know, the victim prior to and at the time of the alleged offense." (Doc. No. 91). *See* R.C. 2152.12(D)(1), (3). The juvenile court further found that Sterling "actively participate[d] in the alleged offense with two co-defendants and was complicit in regards to the organized actions in the alleged offense." (Doc. No. 91). *See* R.C. 2152.12(D)(4). In particular, the juvenile court found that Sterling "entic[ed] the alleged victim to the residence, and did not at any point in time retreat from the alleged offense or participation in the alleged offense." (Doc. No. 91). Even though the juvenile court noted that Sterling did not have possession of a firearm at the time of the alleged offense, the court found that "the alleged co-defendants, with whom [Sterling] participated, did have possession of firearms and these firearms were displayed, used, or brandished during the course of the alleged commission of the offenses." (Doc. No. 91). *See* R.C. 2152.12(D)(5).

{¶19} Regarding Sterling's prior contacts with the juvenile system, the juvenile court found that Sterling "has previously been adjudicated to be a delinquent child." (Doc. No. 91). *See* R.C. 2152.12(D)(6). The juvenile court also found that Sterling "was on Community Control with the Allen County Juvenile Court, and was subject to supervision" at the time of the alleged offense. (Doc. No. 91). *See* R.C. 2152.12(D)(6). The juvenile court found that Sterling "has previously been subjected to juvenile sanctions and programs" and that "the results of those prior juvenile sanctions and programs indicate that rehabilitation of [Sterling] will not occur in the juvenile system." (Doc. No. 91). *See* R.C. 2152.12(D)(7).

**{¶20}** The juvenile court gave significant consideration to the report and testimony of Dr. Dreyer and found that Sterling "presents with sufficient maturity, both emotionally and psychologically, similar to like-age peers." (Doc. No. 91). *See* R.C. 2152.12(D)(8). The juvenile court further found that Sterling is presently 15 years and nine months of age, with approximately five and one-quarter years of potential treatment/rehabilitation within the juvenile system. *See* R.C. 2152.12(D)(9). The juvenile court found that Sterling "has been resistant to change and intervention" and "is very impulsive and lacks remorse." (Doc. No. 91). The juvenile court also found that there is not sufficient time to rehabilitate Sterling within the juvenile system due to "the seriousness of the offense, the assurance of public safety, and [Sterling's] history within the juvenile system." (Doc. No. 91). *See* R.C. 2152.12(D)(9). Notably, the juvenile court found that Sterling "has continued with her criminal thinking and has not benefited from the previous juvenile rehabilitation services." (Doc. No. 91).

**{¶21}** In assessing the factors weighing against transfer under R.C. 2152.12(E), the juvenile court found that Sterling "did not act alone and was, therefore, not the sole principal actor." (Doc. No. 91). *See* R.C. 2152.12(E)(3). The juvenile court further found that Sterling does not suffer from any intellectual or developmental disability, but "is at risk for developing a personality disorder." (Doc. No. 91). *See* R.C. 2152.12(E)(7).

{¶22} Ultimately, the juvenile court concluded that the "factors set forth in R.C. 2152.12(D) indicating that the case should be transferred outweigh the applicable factors set forth in R.C. 2152.12(E) indicating that the case should not be transferred, and that the safety of the community may require that [Sterling] be subject to adult sanctions." (Doc. No. 91). Thus, the juvenile court transferred the case to the general division for criminal prosecution of Sterling as an adult.

{¶23} On appeal, Sterling contends that the juvenile court abused its discretion by concluding that the factors under R.C. 2152.12(D) supporting transfer of the case outweighed the factors under R.C. 2152.12(E) against transfer. Specifically, Sterling contends that the juvenile court gave significant weight and consideration to the report and testimony of Dr. Dreyer and "plac[ed] less weight on testimony from those involved in [Sterling's] direct care and rehabilitation, who had indicated that she made good progress at the juvenile detention center[.]" (Appellant's Brief at 20).

{¶24} "A defendant's 'disagreement with the weight afforded the various statutory factors does not amount to an abuse of discretion.'" *Smith*, 2024-Ohio-2674, at ¶ 20 (3d Dist.), quoting *State v. Morgan,* 2014-Ohio-5661, ¶ 37 (10th Dist.). "Indeed, '[t]he statutory scheme does not dictate how much weight must be afforded to any specific factor and, instead, rests the ultimate decision in the discretion of the juvenile court.'" *Smith* at ¶ 20, quoting *Morgan* at ¶ 37. *See also Bush,* 2023-Ohio-4473, at ¶ 39 (3d Dist.) (noting that "when weighing those and any other relevant

factors, the juvenile court has wide latitude in determining whether it should retain or relinquish jurisdiction over a juvenile").

{¶25} Here, Dr. Dreyer testified at the amenability hearing regarding her opinion that Sterling is not amenable to rehabilitation in the juvenile system at this time. Dr. Dreyer explained that Sterling's history of delinquent predisposition, criminal thinking, and substance abuse are of most concern. In assessing Sterling's risk for future violence, Dr. Dreyer noted that Sterling indicated that she has had homicidal ideations toward her mother and grandmother, stating "I could just do it, nobody would expect me to do it." (Feb. 11, 2025 Tr. at 15). Dr. Dreyer further noted that Sterling reported a history of animal abuse, stealing, bullying, fighting, and associating with people who are gang-affiliated. As to Sterling's history of substance abuse, Dr. Dreyer noted that Sterling reported daily use of marijuana even after she had participated in a substance abuse treatment program through the juvenile system.

{¶26} On cross-examination, Dr. Dreyer was asked about Sterling's current progress while at the juvenile detention center. Dr. Dreyer noted that, even though Sterling's grades have improved and she is participating in mental health treatment, she continues to exhibit behavioral issues. Dr. Dreyer testified to reviewing documentation from the detention center stating that Sterling has had ongoing disputes with peers and has verbalized wanting to "peel somebody's skin off of them[.]" (*Id.* at 73). Dr. Dreyer reiterated her opinion that Sterling is not amenable

to rehabilitation in the juvenile system. "I do not believe that she can make substantial changes that would reduce her risk for recidivism with any future interventions with the Court." (*Id.* at 55).

{¶27} Based on our review of the record, we conclude that the juvenile court did not abuse its discretion by transferring Sterling's case to the general division after concluding that she is not amenable to care or rehabilitation within the juvenile system. The juvenile court properly weighed the R.C. 2152.12 factors and the record supports the juvenile court's findings.

{¶28} Additionally, we conclude that the juvenile court did not violate Sterling's due-process rights by denying her request for a second amenability examination. "Due-process rights are applicable to juveniles through the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution." *State v. Aalim,* 2017-Ohio-2956, ¶ 23. "[I]n the context of a juvenile-court proceeding, the term 'due process' "'expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty.'"" *Id.*, quoting *In re C.S.,* 2007-Ohio-4919, ¶ 80, quoting *Lassiter v. Durham Cty. Dept. of Social Servs.,* 452 U.S. 18, 24 (1981). Even though the Supreme Court of Ohio has not explicitly stated what "fundamental fairness" means in a juvenile proceeding, the Court has acknowledged that "'[a] court's task is to ascertain what process is due in a given

case . . . while being true to the core concept of due process in a juvenile case—to ensure orderliness and fairness.'" *Aalim* at ¶ 23, quoting *C.S.* at ¶ 81.

{¶29} On appeal, Sterling argues that the juvenile court's denial of her request for a second mental examination by an evaluator of her own choosing "implicated the fundamental fairness that the Ohio Supreme Court and the Legislature want from a juvenile proceeding." (Appellant's Brief at 9). Sterling's argument is without merit.

{¶30} In cases involving a discretionary transfer, due process requires that the juvenile court order a "full investigation" into the child which includes "a mental examination of the child by a public or private agency or a person qualified to make the examination." Juv.R. 30(C); R.C. 2152.12(C). Due process further requires that the juvenile court hold an "amenability hearing" to determine whether to transfer jurisdiction. Juv.R. 30(C). Here, the record demonstrates that the juvenile court satisfied these due-process requirements. First, the juvenile court ordered a full investigation into Sterling's social history, education, family situation, and any other relevant factors bearing on amenability. Second, the juvenile court appointed Dr. Dreyer of the Forensic Psychiatry Center for Western Ohio to perform a mental examination of Sterling. Finally, the juvenile court held an amenability hearing to determine whether to transfer jurisdiction.

{¶31} Based on the foregoing, we reject Sterling's argument that fundamental fairness requires that a second mental examination be conducted by an

evaluator of the child's choosing. Even though a second evaluation is authorized by statute for competency examinations in adult cases, neither R.C. 2152.12(C) nor Juv.R. 30(C) provide for a second mental examination for amenability purposes in juvenile cases.

{¶32} Moreover, fundamental fairness does not require that the mental examination be conducted by an evaluator of the child's choosing. Rather, R.C. 2152.12(C) and Juv.R. 30(C) require that the mental examination be conducted "by a public or private agency or a person qualified to make the examination." Dr. Dreyer is a qualified person to make the examination in that she testified at the amenability hearing that she is a clinical psychologist who specializes in forensics. Thus, Sterling has failed to show that the juvenile court violated her due-process rights.

{¶33} Sterling's first and second assignments of error are overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WALDICK, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

William R. Zimmerman, Judge

Mark C. Miller, Judge

Juergen A. Waldick, Judge

DATED:
/hls